UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY TURNER,

    Plaintiff,

v.                        Case No. 3:23-cv-952-BJD-LLL

THE FLORIDA DEPARTMENT
OF CORRECTIONS and CENTURION
OF FLORIDA, LLC,

    Defendants.
_____

## ORDER

### I. Status

Plaintiff, an inmate of the Florida penal system, initiated this case by filing a pro se civil rights Complaint (Doc. 1). He is proceeding *in forma pauperis*. *See* Order (Doc. 6). In the Complaint, Plaintiff names the Florida Department of Corrections (FDOC) and Centurion of Florida, LLC as Defendants. Plaintiff alleges that he has Hepatitis C (HCV), and at every correctional institution at which he has been housed, he has requested medical treatment for his HCV, but Defendants denied him treatment until May 2019. *See* Doc. 1 at 9. He claims that the FDOC violated his rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA), and

Centurion violated his Eighth Amendment rights through its policies, practices, and/or customs that exhibited deliberate indifference to his serious medical needs. *See id.* at 9-14. As relief, Plaintiff seeks compensatory damages, as well as declaratory and injunctive relief. *See id.* at 15.

Before the Court are Defendants' Motions to Dismiss. *See* Defendant Centurion's Motion to Dismiss (Doc. 12); Defendant FDOC's Motion to Dismiss/Judgment on the Pleadings (Doc. 14). Plaintiff has responded. *See* Plaintiff's Response to Defendant Centurion's Motion to Dismiss (Doc. 17); Plaintiff's Response to Defendant FDOC's Motion to Dismiss/Judgment on the Pleadings (Doc. 18). With the Court's permission, the FDOC filed a Reply (Doc. 21), and Plaintiff filed a Sur-reply (Doc. 24). The Motions are ripe for review.

## II.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence"

supporting the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Though detailed factual allegations are not required, Federal Rule of Civil Procedure 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. As such, a plaintiff may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In assessing the sufficiency of a complaint, all reasonable inferences should be drawn in favor of the plaintiff. *See Iqbal*, 556 U.S. at 678.

### III. <u>Plaintiff's Complaint</u>

According to Plaintiff, he has been incarcerated in the FDOC since January 31, 2018. Doc. 1 at 5. In approximately February 2018, FDOC staff diagnosed Plaintiff with HCV and subsequently referred him to the Chronic Illness Clinic for consultation. *Id.* Unknown Centurion medical staff members repeatedly advised Plaintiff "that he had nothing to worry about, his Hepatitis-C was under control and being monitored[,] and that periodic blood tests would be done to determine the condition of his liver." *Id.*; *see id.* at 7 ("Plaintiff was

repeatedly told that he did not qualify for treatment, that his liver was fine, and that treatment was not clinically indicated.").

Between February 2018 and May 2019, "Plaintiff was only given routine blood draws to monitor his HCV," and while he inquired about the condition of his liver and requested HCV treatment, "he was not adequately informed of the severity of his liver disease" and "was not provided treatment" until May 2019. *Id.* at 6. In May 2019, "while undergoing a routine sonogram test for his HCV infection and possible hernia, an unknown-named ultra-sound technician inquired as to when Plaintiff began receiving the court-mandated Hepatitis C treatment (DAAs)." *Id.* When Plaintiff informed this individual that he was not being treated with DAAs, the individual "immediately stopped the sonogram exam and informed Plaintiff that as a direct result of his HCV infection, his medical condition had deteriorated to a point to where it was life-threatening and without immediate medical intervention, including treatment with DAAs, . . . he would lose proper liver function, and more likely than not, his life." *Id.* This individual then demanded that Plaintiff receive treatment. *Id.*

"Ultimately, the sonogram results showed that [Plaintiff] was an F4 and thus had cirrhosis." *Id.* "Prior to Centurion's emergency medical intervention and treatment in May 2019, but after realizing he had F4 cirrhosis, Plaintiff had demanded treatment from Centurion's personnel and FD[O]C to cure his

4

HCV," but Defendants refused to provide him with the treatment. *Id.* at 6-7. According to Plaintiff, Defendants failed to treat him based on "the cost of the medication, along with other non-medical reasons" *Id.* at 8.

Relying on these allegations, Plaintiff raises the following claims: the FDOC violated Title II of the ADA and Section 504 of the RA; and Centurion was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. *See id.* at 9-14. As relief, Plaintiff seeks compensatory damages, as well as injunctive and declaratory relief. *See id.* at 15-16.

### IV. Analysis

Both Defendants argue that Plaintiff's claims are time-barred. Specifically, Centurion argues that Plaintiff's deliberate indifference claim is time-barred because it was filed more than four years after May 2019, the "latest possible date" on which Plaintiff's claim could have accrued. Doc. 12 at 4. According to the FDOC, "Plaintiff knew or should have known that he had been injured by FD[O]C's alleged delay in providing him DAA medications by November 17, 2017, at the latest," because that is the day the Northern District of Florida granted a preliminary injunction in a class action lawsuit regarding the FDOC's treatment of inmates with HCV. Doc. 14 at 4 (citing *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1303-04 (M.D. Fla. 2017)). The FDOC, however, mistakenly asserts that Plaintiff entered FDOC custody on May 23, 2017, *id.*,

but according to Plaintiff's Complaint, Plaintiff did not enter FDOC custody until January 31, 2018, and was not diagnosed with HCV until February 2018. The FDOC seems to acknowledge its mistake, and in its Reply, the FDOC contends that based on the continuing violation doctrine, Plaintiff's claims accrued in May 2019, when he began receiving treatment for his HCV, and because Plaintiff did not file this case until August 9, 2023, and the application of equitable tolling is unwarranted, the Complaint must be dismissed as untimely. *See* Doc. 21 at 2-7.

In response to both Motions, Plaintiff asserts similar counterarguments. He contends that based on the continuing violation doctrine, "the four-year statute of limitations does not begin to run until <u>after</u> treatment for the serious medical condition is concluded, <u>not</u> upon notification of a serious or even life-threatening condition." Doc. 17 at 4; *see* Doc. 18 at 5. He asserts, therefore, that his limitations period "began to run upon the conclusion of treatment on July 17, 2019." Doc. 17 at 5; *see* Doc. 18 at 5-7. And although he did not file this case until August 9, 2023, the limitations period was tolled for 55[1] days while he

---

[1] Plaintiff contends that his limitations period "should be tolled for the 55 days it took to exhaust his administrative remedies." Doc. 17 at 12-13; Doc. 18 at 13. Fifty-seven days passed from and including June 1, 2023, to but excluding July 28, 2023. This two-day difference does not make a difference in the Court's analysis.

6

was awaiting final resolution of his administrative grievances, rendering his case timely filed. *See* Doc. 17 at 5-6; *see also* Doc. 18 at 7-13.[2]

The parties agree that the applicable statute of limitations for all of Plaintiff's claims is four years. The Court applies federal law to determine when the statute of limitations begins to run. *See Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1322 (11th Cir. 2021) ("Federal law governs when a federal civil rights claim accrues."). "Generally, 'the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)). "The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. When the violation alleged involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007) (citations omitted); *see Baker v. Sanford*, 484 F. App'x 291, 293 (11th Cir. 2012) (recognizing that "an 'allegation of a failure to provide needed and requested

---

[2] Plaintiff and the FDOC also argue about whether Plaintiff was a member of the *Hoffer* class, but their arguments have no bearing on the Court's analysis.

medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided'") (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980)).[3]

Here, Plaintiff began receiving HCV treatment in May 2019. And according to Plaintiff, prior to receiving treatment "but after realizing he had F4 cirrhosis, Plaintiff had demanded treatment," but Defendants "failed and/or refused to provide Plaintiff with treatment, in contravention of the prevailing standard of care and their constitutional obligations." Doc. 1 at 7. Thus, by the end of May 2019—at the latest—the facts to support a cause of action were apparent, and when Plaintiff began receiving treatment, the alleged continuing violation ceased. Therefore, Plaintiff's four-year statute of limitations began to run—at the latest—on May 31, 2019.[4]

Plaintiff relies on three cases to suggest that his statute of limitations did not begin until July 17, 2019, the date on which his HCV treatment

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, when cited in this Order it is because the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[4] Plaintiff states in his Responses that his treatment began on May 13, 2019. Doc. 17 at 5; Doc. 18 at 6. In his Complaint, however, he only indicates his treatment began in May 2019. The Court uses the allegations in the Complaint, which provide an even more lenient analysis.

concluded. First, Plaintiff's reliance on *McPherson v. Fla. Dep't of Corr.*, No. 4:19-cv-56-MW/CAS, 2019 WL 11271429, at *2 (N.D. Fla. Sept. 20, 2019), is misplaced. In *McPherson*, the court recognized that "[t]he continuing violations of [the p]laintiff's rights did not end until he was treated on October 9, 2017." Plaintiff interprets that statement as meaning the *McPherson* plaintiff's treatment <u>concluded</u> on October 9, 2017, but such interpretation is not supported by the facts of that case. Indeed, in summarizing the complaint's allegations, the court noted that the plaintiff "finally received HCV treatment on October 9, 2017," suggesting that the treatment began on October 9, 2017, not that the treatment concluded on that date. *Id.* at *1; *see id.* at *3 (quoting the plaintiff's complaint as alleging that the "FD[O]C refused to provide him with DAA treatment until October 9, 2017").

Second, Plaintiff relies on this Court's statement in *Kinard v. Centurion of Fla., LLC*, No. 3:19-cv-490-J-34JRK, 2020 WL 3542650, at *9 (M.D. Fla. June 30, 2020), that "[p]rison officials were still capable of resolving the ongoing deprivation of Kinard's medical care," to mean that the statute of limitations does not begin to run until his HCV treatment concluded. However, Plaintiff takes this statement out of context. The Court made this statement in addressing the defendant's argument that the plaintiff did not properly

9

exhaust his administrative remedies. The Court was not discussing when the statute of limitations began to run.

Third, to the extent Plaintiff relies on *Robinson*, 327 F. App'x at 816, for a similar proposition, the facts of that case are distinguishable and the reasoning still does not support Plaintiff's position. In discussing the continuing violation doctrine, the Eleventh Circuit noted that the plaintiff's allegations "support an inference of continued disregard of [his] need of medical treatment for his hernia until October 3, 2003, when [the plaintiff's] hernia surgery was performed." *Id.* at 818. The plaintiff's hernia in *Robinson* was treated on a single day when the surgery was performed. The fact that the hernia surgery fully "treated" the plaintiff does not equate to a finding that Plaintiff's claims did not accrue until he was fully "treated" by the completion of his HCV treatment.

Additionally, Plaintiff's argument that a medical provider could start a course of treatment and then stop before a plaintiff is cured so as to circumvent the statute of limitations period is entirely speculative. Plaintiff's course of treatment began in May 2019 and was completed in July 2019.

Accepting as true Plaintiff's allegations in his Complaint, his claims accrued and the statute of limitations began to run on May 31, 2019 (at the latest). Plaintiff did not file this case until August 9, 2023, more than four years

later, rending his Complaint untimely. *See United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021) ("[A] Rule 12(b)(6) dismissal based on a statute of limitations is appropriate only where it is apparent from the face of the complaint' that the claim is time-barred." (internal quotations and citations omitted)). Plaintiff acknowledges that his Complaint was not timely filed, but he contends that his statute of limitations was tolled during the pendency of his formal grievance and appeal therefrom. However, even if this Court found that Plaintiff's limitations period was tolled while he was exhausting his administrative grievances,[5] that would not make his Complaint timely filed. Plaintiff contends that his administrative grievances were processing for 55 days—but 70 days passed between May 31, 2023 (the latest date on which Plaintiff's statute of limitations ended) and August 9, 2023 (the date Plaintiff filed this case).[6] And Plaintiff does not otherwise show that equitable tolling is appropriate. Indeed, Plaintiff acknowledges that his treatment concluded on July 17, 2019, but he did not file an administrative

---

[5] Because it does not make a difference in this case, the Court makes no finding on whether the statute of limitations is tolled during the pendency of a prisoner's exhaustion efforts through the prison's administrative grievance procedure.

[6] Plaintiff's statute of limitations actually expired prior to him authoring his formal grievance: four years and 1 day passed between May 31, 2019, and June 1, 2023 (the date Plaintiff wrote his formal grievance, although he did not submit it until June 5, 2023, *see* Doc. 17 at 12; Doc. 18 at 13; *see also* Doc. 21 at 8).

grievance regarding the delay in his HCV treatment until almost four years later. He provides no explanation for this delay, and his allegations do not compel a finding that he was acting diligently or that extraordinary circumstances justify the application of equitable tolling in this case. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) (recognizing that a party seeking the rare remedy of equitable tolling has the burden of proving it, and "can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling"). Plaintiff simply waited too long to file his civil rights Complaint.[7]

Accordingly, it is

**ORDERED**:

1.  Defendant Centurion's Motion to Dismiss (Doc. 12) and Defendant FDOC's Motion to Dismiss/Judgment on the Pleadings (Doc. 14) are **GRANTED to the extent** that this case is **DISMISSED as untimely**.

---

[7] Plaintiff initially "concede[d] that current Florida law does not explicitly toll the statute of limitations whereupon Plaintiff attempts to resolve a claim with an administrative body." Doc. 18 at 7 (citing Fla. Stat. § 95.051). However, in his Sur-reply, Plaintiff argues that the statute of limitations may be tolled based on Fla. Stat. § 95.051(1)(g), which allows for tolling during "[t]he pendency of any arbitral proceeding pertaining to a dispute that is the subject of the action." However, courts "do not address arguments raised for the first time in a pro se litigant's reply brief." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Regardless, utilizing a prison's grievance procedure is not an arbitral proceeding.

2. The **Clerk** shall enter judgment dismissing this case as untimely, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of July, 2024.

_____
BRIAN J. DAVIS
United States District Judge

JAX-3  7/10
c:
Timothy Turner, #K69397
Counsel of Record

13